[No. 15296-1-III.  Division Three.  August 8, 1996.]

SNOKIST GROWERS, ET AL., *Appellants,* v. WASHINGTON INSURANCE GUARANTY ASSOCIATION, ET AL., *Respondents.*

*Richard A. Bersin* and *Franklin & Bersin*; and *Catherine Wright Smith* and *Edwards, Sieh, Hathaway, Smith & Goodfriend, P.S.*, for appellants.

*Arnold J. Barer* and *Law Offices of Arnold J. Barer; Mary R. DeYoung* and *Reed McClure; Russell C. Love* and *Thorsrud Cane & Paulich, Inc., P.S.; Scott R. Sawyer* and *Cozen & O'Connor; Pamela A. Lang* and *Aiken, St. Louis & Siljeg, P.S.; Joseph D. Hampton* and *Lane Powell Spears Lubersky; W. George Bassett* and *Graham & Dunn; Tyna L. Ek* and *Merrick, Hofstedt & Lindsey; Barry M. Johnson* and *Johnson & Martens; Thomas S. James, Jr., Gina Z. Walton,* and *Davis Wright Tremaine;* and *Terrence J. Cullen* and *Forsberg & Umlauf, P.S.*, for respondents.

SCHULTHEIS, J. — Snokist Growers and the estates

and/or marital communities of former Snokist officers and members of its board of directors appeal the superior court's summary dismissal, without prejudice, of their declaratory action against their comprehensive general liability and excess insurers.[1] Snokist and the individual plaintiffs contend their insurers have a duty to defend them against and indemnify them for claims made by U-Haul Company of Inland Northwest for the cost of environmental cleanup of U-Haul's property. Yakima Valley Spray Company (YVS), now defunct, owned the subject property prior to 1974 and operated a pesticide manufacturing plant there. Snokist was a majority shareholder in YVS, and the individual plaintiffs in this action also served on YVS's board or were officers or shareholders of that company. We affirm the superior court's dismissal of the action.

In November 1988, U-Haul notified Snokist that the Washington State Department of Ecology was investigating the subject property for possible contamination by pesticides. After discovering concentrations of hazardous wastes at the site and detecting perchloroethene in area groundwater, Ecology designated U-Haul a "potentially liable person," as defined in RCW 70.105D.020(15)[2] of the model toxics control act. Ecology issued an enforcement order in December 1991, requiring U-Haul to perform a remedial investigation and feasibility study (RI/FS) for the property.[3]

In 1990, before Ecology entered the enforcement order, U-Haul filed lawsuits in superior court and in federal court against multiple parties, all of whom it alleged were prior owners of the subject property. The defendants included

---

[1]The Washington Supreme Court accepted discretionary review of the appeal. It later transferred the appeal to Division Three of the Court of Appeals.

[2]In 1989, the definition appeared in subsection (8) of the statute. *See* LAWS OF 1989, ch. 2, § 2. The definition remains the same.

[3]An RI/FS gathers additional environmental data, investigates various cleanup options, and analyzes the feasibility of the options.

the individual plaintiffs in this case, but did not include Snokist. These suits were brought under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C.A. §§ 9601-9675 (West 1995), and under the model toxics control act, RCW 70.105D. Under Washington's act, current owners of property are liable for cleanup of hazardous waste sites, as are persons who were owners at the time the hazardous substances were released. RCW 70.105D.040. The act is based, in part, upon the federal act, which also imposes liability on current owners and owners at the time of release. 42 U.S.C.A. § 9607.

U-Haul alleged the individual plaintiffs were owners, officers, and/or board members of YVS and sought damages for the alleged release of hazardous substances on the property during the time YVS owned it. U-Haul also sought a declaration the defendants were responsible for cleanup of the property.[4] The individual plaintiffs and Snokist subsequently executed Standstill and Tolling Agreements with U-Haul that tolled the statute of limitations as to them. U-Haul's counsel attested he advised Snokist that U-Haul would join it as a defendant in the state and federal actions if it did not sign the agreement. On the basis of the signed agreements, U-Haul dismissed the individual plaintiffs from the lawsuits.

In June 1992, Snokist and the individual plaintiffs agreed with U-Haul to share in the cost of performing the RI/FS requested by Ecology. A revised draft report was submitted to Ecology in August 1994. On approval of the final report, Ecology will set a schedule for cleanup.

In 1994, Snokist and the individual plaintiffs brought

[4]RCW 70.105D.080, effective May 1993, now provides a statutory basis for such an action. It reads in part: "[A] person may bring a private right of action, including a claim for contribution or for declaratory relief, against any other person liable under RCW 70.105D.040 for the recovery of remedial action costs." A similar right of action is created by the federal act, 42 U.S.C.A. §§ 9607(a)(4)(B), 9613(f).

this action against their insurers.[5] They sought a declaration the various policies insured Snokist and its officers, directors, shareholders and employees against "all sums [they] become legally obligated to pay as damages arising from alleged contamination and property damage on the Yakima property . . . ." In addition, they sought a declaration the primary liability carriers' and American Home Assurance Company's refusal to investigate and defend against claims for such damages was wrongful.

The insurers successfully moved for summary judgment. The court held there was neither a duty to defend nor a justiciable controversy sufficient to support a declaratory action on the issues of coverage and indemnification. The court relied upon the fact U-Haul had not sued Snokist, and the fact its lawsuit against the individuals did not seek to hold them liable in their capacities as Snokist's officers or directors. It stated: "[E]ven if [the individual plaintiffs'] service as YVS board members was within the scope of their duties as Snokist board members, their conduct as YVS members is not within the scope of [their] duties as Snokist members and consequently the policies do not provide coverage." The court also entered a certificate of finality under CR 54(b). Although the dismissals were without prejudice, the court was persuaded delaying the appeal would adversely impact the ability of Snokist and the individual plaintiffs to participate in the cleanup and to engage in settlement negotiations regarding responsibility for cleanup costs.

(1) Does a justiciable controversy exist, such that a court can determine whether the insurers have a duty to indemnify?

■ The trial court dismissed Snokist's and the individual plaintiffs' action for declaratory relief on the ground it did not present a justiciable controversy. A justiciable controversy is:

---

[5]The primary and excess policies were issued by the defendant insurers through 1989.

(1) . . . an actual, present and existing dispute, or the mature seeds of one, as distinguished from a possible, dormant, hypothetical, speculative, or moot disagreement, (2) between parties having genuine and opposing interests, (3) which involves interests that must be direct and substantial, rather than potential, theoretical, abstract or academic, and (4) a judicial determination of which will be final and conclusive.

*Walker v. Munro*, 124 Wn.2d 402, 411, 879 P.2d 920 (1994) (quoting *Nollette v. Christianson*, 115 Wn.2d 594, 599, 800 P.2d 359 (1990)).

The insurance policies here provide coverage for sums "the insured is legally obligated to pay." The insurers argue that Snokist's and the individual plaintiffs' legal obligation for the costs of cleanup is speculative and therefore nonjusticiable. For purposes of asserting a claim for defense and indemnification of U-Haul's claims against it, Snokist appears to take the position that, according to U-Haul, it stands in the shoes of YVS, and is strictly liable under RCW 70.105D as a prior owner.[6] But the record indicates only that Snokist was a majority shareholder in YVS and that Snokist board members and officers also served, at Snokist's request, as YVS board members and officers. These facts do not articulate a theory of liability, let alone a justiciable controversy.

Snokist's reliance on *Slottow v. American Cas. Co.*, 10 F.3d 1355 (9th Cir. 1993) is misplaced. There, the court held that a bank director who served as president of a bank subsidiary was covered under the bank's officers' and directors' liability policy for his acts as president of the subsidiary. Unlike the situation here, the facts in *Slottow* indicated parent corporation liability. Specifically, the

---

[6]Solely for the purpose of asserting coverage under the insurers' policies, Snokist assumes that it stands in the shoes of YVS. Therefore, it frames the controlling issue as whether a lawsuit by U-Haul against Snokist, or a finding by Ecology that Snokist is a potentially liable person, is required before a justiciable controversy as to insurance coverage can arise. It relies upon *Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 874 P.2d 142 (1994). However, as stated above, we do not reach this issue because the record, as it now stands, does not support any legal theory that places Snokist in YVS's position as a prior owner.

bank had undercapitalized the subsidiary, and there was a unity of interest and ownership between the parent and the subsidiary making it inequitable to treat the two as separate corporations. *Slottow*, 10 F.3d at 1360.

Similarly, the court in *Continental Copper & Steel Indus., Inc. v. Johnson*, 641 F.2d 59 (2d Cir. 1981) held the insurer was liable for defense costs incurred by Continental's directors in defending a suit brought against them by Halliwel Mines. Continental was the largest single shareholder in Halliwel and had designated five of its directors to serve on Halliwel's board. Subsequently, Halliwel sued Continental and the five directors, alleging unlawful domination and breach of fiduciary duties. *Continental*, 641 F.2d at 60. Continental's directors' liability insurer refused to pay the defense costs incurred by the directors. The insurer argued it covered the directors only in their capacity as directors of Continental and not as to acts taken as directors of Halliwel. The court held coverage existed because Halliwel's suit against the directors alleged they were acting on behalf of Continental in looting Halliwel for Continental's benefit. *Continental*, 641 F.2d at 60. Here, U-Haul sued the individual plaintiffs in their capacities as officers, directors, and owners of YVS. It did not name Snokist as a defendant, nor did it allege facts that would indicate Snokist controlled the individual plaintiffs in their service on the YVS board.

The trial court properly granted the insurers' motion for summary dismissal of Snokist's action seeking a declaration of coverage and indemnity. Likewise, the court properly dismissed the individual plaintiffs' action. Absent any allegation of facts that would support a finding Snokist stands in the shoes of YVS, these actions do not present a justiciable controversy.

(2) Do the primary insurers have a duty to defend Snokist and the individual plaintiffs before either U-Haul or Ecology brings suit alleging facts sufficient to conclude that Snokist stands in the shoes of YVS and is strictly liable as a prior owner of the property?

■ Our response to this issue is the same as to issue (1). Absent facts that present a question as to whether Snokist has the same "prior owner" responsibility as YVS, U-Haul's demand that Snokist participate in the cleanup does not trigger the insurers' duty to defend either it or the individual plaintiffs in their capacities as Snokist board members and officers. Consequently, we do not decide whether an actual lawsuit brought by the claimant against the insured always is required before the duty to defend arises.

In light of our holding, we deny Snokist's request for attorney fees on appeal.

Affirmed.

SWEENEY, C.J., and THOMPSON, J., concur.

After modification, further reconsideration denied September 24, 1996.

Review denied at 131 Wn.2d 1010 (1997).